UNITED STATES of America,
Plaintiff–Appellee,

v.

William Ellwood ROBERTS, Jr.,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Ernest Delano THOMPSON,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Thurman Carroll MOTT,
Defendant–Appellant.

Nos. 88–5087, 88–5089 and 88–5090.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 13, 1989.
Decided April 24, 1989.

Sa'ad El–Amin (El–Amin & Associates, on brief), Arnold Reginald Henderson, V (Wilder, Gregory & Martin, Richmond, Va., on brief), Gerald Bruce Lee, Alexandria, Va. (James E. McCollum, Jr., College Park, Md., Cohen, Dunn & Sinclair, P.C., on brief, Alexandria, Va.), for defendants-appellants.

N. George Metcalf, Asst. U.S. Atty., Richmond, Va., (Henry E. Hudson, U.S. Atty., Alexandria, Va., David T. Maguire, Asst. U.S. Atty., on brief), for plaintiff-appellee.

Before WIDENER and CHAPMAN, Circuit Judges, and HENDERSON, United States District Judge for the District of South Carolina, sitting by designation.

CHAPMAN, Circuit Judge:

William Ellwood Roberts, Jr., Ernest Delano Thompson and Thurmon Carroll Mott were convicted by a jury of conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. § 846, possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1), and travel in interstate commerce to facilitate an unlawful activity in violation of 18 U.S.C. § 1952. Thompson was convicted of seven counts of using a communication facility to cause the possession of marijuana with intent to distribute in violation of 21 U.S.C. § 843(b). Thompson was separately charged in Count Two with possession with intent to distribute 7 kilograms. He was convicted and he does not appeal this conviction. Mott appeals his conspiracy conviction, but Roberts and Thompson do not. All appellants challenge their conviction of possession with intent to distribute more than 100 kilograms of marijuana, claiming that if they did have possession of marijuana it did not exceed 100 kilograms.

Mott appeals the district court's refusal to grant him a severance. All claim error by the court in failing to deliver to defense counsel a confidential DEA file on an informant Mitchell Tyree. The appellants claim error by the district court at the sentencing stage in relying upon uncorroborated allegations of an informant, in denying Roberts' constitutional right of confrontation, in fining Thompson $1,000,000 without articulating its reasons for departing from the Fine Table set forth in the Federal Sentencing Guidelines in § 5E4.2, and in allegedly imposing a large fine upon Roberts because of the exercise of his Fifth Amendment privilege against self incrimination.

We affirm all of the convictions and each sentence imposed.

## I

This was a reverse sting operation in which the government agents, who had come into possession of a large quantity of marijuana, wished to induce large marijuana dealers to buy the marijuana and take possession of it so they might be prosecuted. Mitchell "Peavine" Tyree was an undercover informant and was used by DEA Agent Burroughs to seek out individuals to buy large quantities of the marijuana. Tyree contacted appellant Thompson, and after numerous calls and conversations, he arranged for Thompson to meet DEA Agent Burroughs and other DEA agents posing as large smugglers of marijuana. Thompson was offered a commission on any sales that he might arrange, and he was given 7 kilos of marijuana as a sample. This is the basis for the charge contained in Count Two. Burroughs and Thompson worked out a means of communicating by using Thompson's digital electronic pager and various pay telephones. A number of telephone calls were subsequently recorded, and a proposed sale of 2,000 pounds of marijuana was arranged for December 2, 1987 at a price of $325 per pound. To facilitate the proposed sale, the DEA agents used a farm in Powhatan County, Virginia where they had a mobile home, a rental truck containing 2,000 pounds of marijuana and audiovideo tape recording equipment to film the transaction.

Thompson advised Burroughs that the customers were coming from Washington, D.C. and that he would meet them at approximately 5:00 p.m. Agent Burroughs met Thompson at a truck plaza on Route 360. Thompson got into Burroughs' automobile and they were followed by a pickup truck. Appellant Mott was driving the pickup truck and appellant Roberts was in the passenger seat. The pickup truck had oversized springs capable of carrying a heavy load and a camper shell with covered windows was over the bed of the pickup truck.

At the farm the DEA truck was parked next to the mobile home, and upon arrival the pickup truck was directed to back up,

tailgate to tailgate, to the DEA truck to facilitate transfer of the bales of marijuana. This was also for the purpose of bringing the trucks and the parties within the line of vision of the hidden video camera. Roberts got out of the pickup truck carrying a briefcase and a box. He handed the briefcase to Mott and the box to Thompson. He then asked to see and examine the load of marijuana. He climbed into the DEA truck and looked around, but before he could test any of the marijuana, the DEA agents directed him into the mobile home in order that the agents could see his money and the camera could better photograph the transaction. Roberts took the briefcase from Mott and went with Thompson into the mobile home. He sat down at a table and opened the briefcase which contained a large quantity of currency. Then he opened the box and brought out another briefcase which also contained currency. He stated that he was unsure of the total and that he would have to count the bills. This took some time and when he had finished, he announced that there was $350,-000 present. A later counting by the agents showed the correct total to be $372,-470.

After the money was counted, a calculator was produced and it was determined that the amount would buy 966 pounds of marijuana, allowing a five percent overage for the bulk of the burlap, which enclosed the bales of marijuana. Roberts agreed to the calculation and it was further agreed that in addition to the 966 pounds, the purchasers would receive the next largest bale of marijuana. Roberts stated that he would keep the money with him and the two briefcases were put into the cab of the pickup truck.

Roberts again climbed into the back of the DEA truck and began to examine the marijuana. He took a sample of the marijuana, rubbed it, and requested cigarette paper to smoke the sample. After this test smoke, he declared the marijuana to be "righteous." At this point Roberts began to move around the bed of the DEA truck examining and selecting bales of marijuana. Appellant Thompson was furnished a pencil and paper and recorded the bale numbers and weight of the bales selected. Bale No. 3 was selected, weighed and placed in the bed of the pickup truck. This bale weighed 61 pounds. Bale No. 120 was then selected, weighed and placed in the bed of the pickup truck. Bale 120 weighed 59 pounds. Roberts then moved bales 47, 22 and 28 to the tailgate area of the DEA truck for weighing. Bale 47 was placed on the scale and weighed 69 pounds. At this point the DEA agents decided to bring the matter to a conclusion and arrested Roberts, Thompson and Mott. Bales 22 and 28 weighed 61 pounds and 62 pounds, respectively. The total weight of the five bales that had been selected and separated for weighing and transfer to the pickup truck was 312 pounds (141.9 kilograms). The arrests were made before Roberts had selected and weighed all of the bales to be purchased and also before any payment was made. The DEA agents testified that they were planning to use the same mobile home and the same truck load of marijuana at another location on the same evening, therefore, they made the arrests earlier than they would normally prefer.

## II

Appellants contest their convictions under Count Three which charged possession with intent to distribute more than 100 kilograms (220 pounds) of marijuana in violation of 21 U.S.C. § 841(a)(1) and the aiding and abetting statute, 18 U.S.C. § 2. They contend that they never had either actual or constructive possession of any of the marijuana; and even if they possessed bales No. 3 and No. 20, which had been transferred into their pickup truck, this would only be 120 pounds or approximately 54 kilograms.

The court correctly charged the jury on the essential elements to convict under Count Three. The government had to prove beyond a reasonable doubt that the appellants knowingly and intentionally possessed more than 100 kilograms of marijuana with the intent to deliver or transfer possession of it to another person. The charge correctly instructed on actual and

constructive possession, and on sole and joint possession. The jury was instructed that possession of large quantities of an illegal substance would support an inference of intent to distribute.

Since the jury was properly instructed on the law, the issue is whether there was substantial evidence, taking the view most favorable to the government, to support the conviction. *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). We must review the record to determine whether there was substantial evidence of constructive possession, which we have said "[e]xists when the defendant exercises, or has the power to exercise, dominion and control over the item." *United States v. Laughman,* 618 F.2d 1067, 1077 (4th Cir.1980), *cert. denied,* 447 U.S. 925, 100 S.Ct. 3018, 65 L.Ed.2d 1117 (1980).

■ Appellants assert that they never had dominion and control over any of the marijuana, because the government never surrendered control of any of the marijuana in the back of the DEA truck. They also claim that they could not exercise dominion and control over the marijuana because the government agents would not let them leave the area. Whether the DEA agents would have allowed them to leave the area with the marijuana in the pickup truck is not the test of constructive possession. In *United States v. Zandi,* 769 F.2d 229 (4th Cir.1985), the defendants were convicted of possession of opium with intent to distribute. They were arrested at Dulles International Airport as they attempted to claim a package which had arrived from Pakistan and was in a bonded customs warehouse. Zandi had the shipping documents, and when he went to the bonded warehouse to pick up the package, he was advised that a customs inspector was in the office ready to clear the package. He left without obtaining possession of the package. This aroused suspicion and a customs inspector was called who opened the package and found opium. The package was resealed and the next day Zandi came back to the warehouse to pick up the package. He presented the documents and stated he was picking up the package for his uncle.

When the package was handed to him, he was asked by a customs officer to open it for inspection and the opium was discovered. On these facts we held:

> Likewise, in the instant case, the appellants acquired constructive possession of the opium when they acquired actual possession of the shipping documents. That the customs officials inspected the package, discovered the opium and thereupon prevented the brothers from gaining actual possession of the opium, did not render their conviction under the statute legally flawed—i.e. lacking the essential element of "possession".[9]

In footnote 9 we stated:

> While there undoubtedly exists a risk of overzealous and too broad use of the notion of "constructive possession," the possibility does not exist in the present case since the appellants' payment of the necessary shipping and storage fees, their possession of the legally recognized shipping documents, and their request to have the package brought forward at the warehouse afforded more than sufficient indicia of constructive possession.

769 F.2d at 235.

In *Zandi* we quoted with approval from *United States v. Martorano,* 709 F.2d 863 (3d. Cir.1983), *cert. denied,* 464 U.S. 993, 104 S.Ct. 486, 78 L.Ed.2d 682 (1983). Martorano intended to distribute large quantities of a controlled substance and devised the plan by which a DEA informant would rent a van, place the drugs in the van and park it in a local square. Martorano gave the DEA agent money for the drugs at a designated meeting and the agent gave Martorano the key to the van and to a padlock for the rear doors. The van was seized before Martorano took actual possession of the drugs. The Third Circuit found constructive possession of the drugs when Martorano acquired actual possession of the keys to the van and to the padlock. The fact that the government officials prevented him from taking actual control of the drugs did not relieve his guilt of possession with intent to distribute.

In *United States v. Damsky,* 740 F.2d 134, 139 (2d Cir.1984), *cert. denied,* 469

U.S. 918, 105 S.Ct. 298, 83 L.Ed.2d 233 (1984), the court stated:

Appellants argue that because the government never intended to relinquish the hashish, appellants never had "dominion and control" over it. Therefore, they argue, they did not "possess" the hashish in violation of 21 U.S.C. § 841. *See United States v. Baratta,* 397 F.2d 215, 224 (2d Cir.), *cert. denied,* 393 U.S. 939, 89 S.Ct. 293, 21 L.Ed.2d 276 (1968). We rejected a virtually identical argument with respect to illegal possession of firearms in *United States v. Toner,* 728 F.2d 115, 128 (2d Cir.1984), and reject it again here with respect to possession of hashish. *Accord United States v. Martorano,* 709 F.2d 863, 869 (3d Cir.) *cert. denied* [464] U.S. [993] 104 S.Ct. 486, 78 L.Ed.2d 682 (1983); *United States v. Jones,* 676 F.2d 327, 332 (8th Cir.) *cert. denied,* 459 U.S. 832, 103 S.Ct. 71, 74 L.Ed.2d 71 (1982). Damsky had dominion and control over the camper once he was given the key and was therefore in constructive possession of the hashish in the camper. *See United States v. Vera,* 701 F.2d 1349, 1357 (11th Cir.1983).

The actions of the appellants support a finding of constructive possession. The deal had been struck for the purchase of 966 pounds of marijuana plus the next largest bale in exchange for over $350,000 in cash. The cash had been counted and was present to be delivered upon the selection and weighing of the bales. The DEA truck was loaded with 3,000 pounds of marijuana packed in bales averaging about 60 pounds each. The scales had been placed on the rear of the DEA truck bed and appellant Thompson was weighing and recording the weight of the bales as Roberts selected and segregated them. All Roberts had to do was to select enough bales to total 966 pounds and one additional bale. He had tested the quality by feeling, rubbing, and smoking. He had pronounced it "righteous." As he selected the bales, he cut the burlap to check the quality of each. He had selected five bales and set them to the rear of the truck for weighing and loading. Two of the bales had been weighed and placed in the pickup truck. A third bale

was on the scale and two others were waiting to be weighed when the arrests were made. When Roberts selected a bale and set it aside for weighing and loading, he had constructive possession of the bale. The evidence was sufficient to convict Mott and Thompson of aiding and abetting under 18 U.S.C. § 2.

The present facts are similar to those in *United States v. Jones,* 676 F.2d 327 (8th Cir.1982) in which DEA agents were selling a large quantity of marijuana to a large drug distributor. The deal had been struck and the money had been paid. Two bales of marijuana were located in the trunk of two DEA vehicles. Jones had backed his van up to the vehicles and the trunk key to one of the vehicles had been given to Jones. He had moved two bales from the trunk into the van when he was arrested. The court concluded:

The evidence was sufficient to show that Jones obtained constructive possession when he was given the key to the agent's car trunk and obtained actual possession when he loaded the bales of marijuana into the van. The fact that the agents intended to arrest Jones and recover control of the marijuana does not negate the fact, that for however short a period of time, Jones was in actual control of the marijuana.

*Id.* at 332.

The fact that the money had not been delivered in our case does not change the result. Roberts had tested, selected, segregated and assumed control over five bales with a total weight of more than 100 kilograms.

### III

■ Appellant Mott challenges the sufficiency of the evidence that convicted him of conspiracy to possess marijuana with intent to distribute. He claims that he did no more than drive the pickup truck to the meeting place and ask instructions on travel back to Washington, D.C. through Culpepper, Virginia.

An examination of the record reveals much more about Mott's involvement in the

conspiracy. He accompanied Roberts from Baltimore to Richmond on December 2, 1987, met with Thompson and then drove to the farm where the deal was to be consummated. He was quite familiar with the pickup truck and described the size of its engine. His familiarity with the truck was also important because it was equipped with D.C. tags and Mott was from Baltimore. When he arrived at the farm he backed the pickup truck into the tailgate to tailgate position with the DEA van. The bales of marijuana in the van were obvious to him. When he descended from the truck he carried one of the bags of money. He talked with one of the DEA agents about hauling loads of drugs around the country and asked two other agents about a quick way to Route 15 in order to use this back way to Washington rather than going via the interstate. It was obvious from this statement that he did not wish to travel the more heavily patrolled highways.

When transfer of the bales from the DEA van to the pickup truck began, Roberts advised that Mott did not help load. Mott contends that this indicated he was not in the conspiracy, but the evidence shows that he did not load because he had a recently dislocated shoulder and not because he was not a member of the conspiracy.

██ The judge properly charged the jury that one may become a member of the conspiracy without full knowledge of all of its details, but if he joins the conspiracy with an understanding of the unlawful nature thereof and willfully joins in the plan on one occasion, it is sufficient to convict him of conspiracy, even though he had not participated before and even though he played only a minor part. Certainly the evidence against Mott was sufficient to prove that he was a willful member of the conspiracy and aware of its purpose at the time overt acts were committed.

IV

██ Appellants claim error because the trial judge refused to order the government to turn over to the defense the confidential DEA files on Mitchell "Peavine"

Tyree, the government informant. The defendants initially moved for the disclosure of the name of the confidential informant and the amount of any payments made to him. The government responded that the confidential informant was not involved in negotiating the drug sale, and he had no contacts with the defendants Roberts and Mott. The government also contended that the defendants had failed to show that there was a reasonable probability that disclosure of the identity of the informant would be relevant or material to the defense. At the argument of this motion, it was obvious that defense counsel knew the name of Mitchell Tyree because the attorney stated that he was the confidential informant. The court found that there had been no showing that the identity of the informant was confidential or that he was central to the crime alleged in the indictment. It is obvious from the evidence that Tyree put DEA agent Burrows in touch with Appellant Thompson, but he played no part in the activities occurring at the farm on December 2, 1987.

Since Tyree's identity was known, the defendants could have subpoenaed him. Appellants contend that they needed the DEA confidential file on Tyree to determine if Agent Burrows' testimony about Tyree's involvement in this matter was truthful. Tyree did not testify and played a minor role in these events. We see no error in the refusal to require the production of the DEA's confidential file. In *United States v. Lewis*, 671 F.2d 1025 (7th Cir.1982), the defendant was convicted of willful failure to file a tax return. The court found that the identity of the informer, who was a mere "tipster," was not required. It reasoned that while a tipster is important in uncovering tax evasion, such person had only a small role in the prosecution of the case. Tyree, who was known to the appellants, was important in putting Appellant Thompson in contact with Agent Burrows, but he played no part in the prosecution, and disclosure of the confidential file on him would serve no useful purpose.

## V

■ Appellant Mott has insisted from the beginning that he was such a minor player in this action that he was prejudiced by being tried with Roberts and Thompson. He appeals the denial of his severance motion. We find no merit in this. His role in the conspiracy has already been explained and need not be repeated. He argues that he was named in only three of the indictment's eleven counts. His codefendant Roberts was also named in only three, because the remaining eight counts all related to separate acts of appellant Thompson. Mott conveniently overlooks the fact that Counts Five through Eleven charge Thompson with use of a communications facility to cause possession of marijuana with intent to distribute in violation of 21 U.S.C. § 843(b), and each count related to a separate telephone call. Count Two charged only Thompson with possession of seven kilograms of marijuana with intent to distribute. This was the sample given to Thompson at the time of his first meeting with the DEA agents. Mott complains of the admission of video tape and telephone tape conversations, but these tapes were admitted to establish the statements made in furtherance of the conspiracy of which he was a member. Generally persons charged in a conspiracy should be tried together. *United States v. Boyd*, 610 F.2d 521 (8th Cir.1979), *cert. denied*, 444 U.S. 1089, 100 S.Ct. 1052, 62 L.Ed.2d 777 (1980).

■ The issue of whether there is sufficient prejudice to warrant a severance is a question committed to the sound discretion of the trial court. *United States v. Mandel*, 591 F.2d 1347, 1371 (4th Cir.1979), *cert. denied*, 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980). A showing that a defendant would have a better chance of acquittal in a separate trial does not establish prejudice sufficient to require severance. *United States v. Thomas*, 676 F.2d 239, 243 (7th Cir.1980), *cert. denied*, 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 364 (1981).

## VI

Both Roberts and Thompson appeal the court's imposition of fines of $250,000 and $1,000,000, respectively. Roberts claims that his fine violated his constitutional privilege against self incrimination, because he was asked by a probation officer to fill out a financial statement, and the form to be used warned that making a false statement could lead to prosecution under 18 U.S.C. § 1001. On the advice of his attorney that he might subject himself to income tax violations or other drug charges, Roberts refused to submit a complete financial statement. The court was furnished with financial information concerning his home, his wife's income and their joint savings account. Roberts claims that the court increased his fine because he asserted his Fifth Amendment privilege.

■ There is nothing in the record to support the assertion that the court retaliated against Roberts in any way because of his failure to furnish information. The facts available to the court showed that Roberts was arrested with $372,470 in his possession, all in cash. During discussions with DEA agents when the deal was being made, an inquiry suggested that Thompson and Roberts would like to return a few days later to buy the remainder of the marijuana. This would be more than 1,000 pounds at $325 per pound. Although Roberts did not supply a financial statement, it was obvious that he had funds available to him. The court found that he was "a known, identified major marijuana distributor in the Baltimore, Maryland area." The Sentencing Guidelines at § 5E4.2 provide fines for individual defendants, and a table with minimum and maximum limits is set forth for various offense levels, but § 5E4.2(c)(4) states:

(4) Subsection (c)(2), limiting the maximum fine, does not apply if the defendant is convicted under a statute authorizing (A) a maximum fine greater than $250,000 or (B) a fine for each day of violation. In such cases, the court may impose a fine up to the maximum authorized by the statute.

Roberts and Thompson were each convicted under 21 U.S.C. §§ 841(a)(1) and 846. Each of these statutes carry a fine of up to

$2,000,000, the Fine Table maximum of 5E4.2(c)(3) is not applicable, and no articulation of the district court is necessary to explain why the Fine Table was not applied.

Roberts also asserts that the trial court did not make explicit findings when he challenged the accuracy of information in his presentence report. He states that the presentence report credits the $372,470 as being his, but he offers no explanation of who else supplied any portion of this cash. When one is arrested with such a sizable amount of U.S. currency, he must do more than deny ownership to create an issue of ownership.

■ Thompson challenges his fine of $1,000,000 as being excessive, but it is within the limits set by the statutes he violated. The presentence report showed that he had substantial assets, but he denies this. At the time of his arrest his computer was seized and out of this came a financial statement that showed substantial assets. He was denied bond based primarily upon the court's belief that he was hiding substantial assets. The Commentary to § 5E4.2 states that a larger fine is justified if the defendant has failed to disclose income or assets. When sentencing Thompson, the court stated:

> The Court has imposed a sentence at the upper end of the Guidelines' range for the following reason: it appears that this particular offense is serious, and I am convinced beyond any doubt that Mr. Thompson had extensive involvement in this particular criminal behavior, but has also had extensive involvement in similar criminal behavior in the past. The best proof comes from his own lips on the tapes, the video, the way that he carried himself, demonstrating an expertise far beyond that of any rookie involved in this kind of drug deal.
>
> Additionally, he personally spoke of long years of involvement, deep involvement, of serious financial involvement in drug distribution. And it is the Court's hope that the sentence would appropriately indicate the seriousness with which the matter is considered.

The court did find that Thompson was not proven to be a cocaine trafficker as alleged by the government, and this finding was attached to the presentence report after the sentencing. The Thompson fine is large but it is within the range provided by the statutes he violated. We do not find any error in the Thompson fine nor in the Roberts fine. There is nothing in the record to support Roberts' claim that the court increased his fine because, acting on the advice of counsel, he refused to furnish financial information for use in the preparation of his presentence report.

## VII

■ Roberts claims that at the sentencing hearing he was denied his constitutional right of confrontation because the court in making findings that increased his offense level by four relied upon the uncorroborated hearsay statements of a DEA informer and two state court informations charging conspiracy to distribute marijuana, which informations have now been dismissed. The worksheets used to establish the sentencing guidelines showed a Basic Offense Level (BOL) of 28. This presentence report recommended that the BOL be increased by four because of "the amounts of money and drugs involved, the interstate involvement of the participants, and the reputation of widespread drug dealing activities of Thompson and Roberts." This report also recommended that the level be reduced by two because of Roberts' acceptance of responsibility. This resulted in an Offense Level Total of 30 (28 + 4 − 2) and a guideline range from the sentence table of 97 to 121 months. His sentence of 121 months is within the guidelines.

The presentence report and the worksheets are all based upon the appellants having possession of at least 966 pounds of marijuana. The BOL for each count on which Roberts was convicted is based upon the amount of marijuana involved. He was convicted of conspiracy to possess marijuana with intent to distribute, possession of marijuana with intent to distribute, and travel in interstate commerce to carry on an illegal activity. To have a BOL of 28 on

these counts, the amount of marijuana must exceed 400 kilograms. If the amount is between 100 and 399 kilograms the BOL is 26. The BOL may be increased under Section 3B1.1(a) "If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels." There was no evidence that this activity involved five or more participants, but the level was increased by 4 because of the amount of money and drugs involved, the interstate transportation and the reputation of Thompson and Roberts for widespread drug dealings.

In Section II we found the evidence was sufficient to establish beyond a reasonable doubt that defendants had constructive possession of more than 100 kilograms of marijuana. This was based upon the selection and separation of five bales by Roberts. Of these five bales, two had been weighed and placed in the defendant's pickup truck, one was on the scale, and two were waiting to be weighed. The total weight of the five bales was 312 pounds. This is more than 100 kilograms, and possession with intent to distribute between 100—399 kilograms of marijuana carries a BOL of 26 and not 28. Section 2D1.1(a)(3) Drug Quantity Table.

The government contends that Roberts had constructive possession of everything on the truck (2,000 pounds), and to gain actual possession, he had only to select and set aside the chosen bales. Alternatively, it argues that there was constructive possession of at least 966 pounds, plus the next largest bale, since this was the amount of marijuana that had been agreed upon in exchange for the $350,000 that Roberts had in his possession. If possession of either of the larger amounts was proved, it would exceed 400 kilograms and establish a BOL of 28 (400–699 kilograms).

We are unwilling on the present record to extend constructive possession beyond the five bales. The indictment charged more than 100 kilograms and this is what the government set out to prove at trial. It directed its proof and our attention to the five bales totaling more than 100 kilograms. It took a conservative view of its case in only charging possession of more than 100 kilograms, when it could have charged possession of more than 1,000 kilograms if it thought it could prove possession of the entire load. We do not think that for sentencing on possession with intent to distribute the government should try to stretch the amount past the 312 lbs. we found in Section II. We do not hold that in possession with intent to distribute cases the BOL is limited to the amount charged in the indictment, when the proof at trial clearly establishes a larger amount. We hold that on the present record proof of the amount in possession is not sufficient to justify a 28 BOL since such requires possession in excess of 400 kilograms.

However, this does not change the BOL of 28 used to compute the sentence. Although we find a proper BOL of 26 on the possession with intent to distribute, the use of BOL 28 is correct on the conspiracy count. The purpose of the conspiracy was to possess with intent to distribute 966 pounds, plus the next largest bale, and to purchase this marijuana with the $350,000 Roberts brought to the meeting. The conspiracy conviction is not challenged on appeal by either Roberts or Thompson, and the amount of marijuana they intended to acquire was more than 400 kilograms, the threshold weight for BOL 28. For conspiracy convictions the guidelines provide:

Section 2D1.4. Attempts and Conspiracies. (a) Base Offense Level: If a defendant is convicted of participating in an incomplete conspiracy or an attempt to commit any offense involving a controlled substance, the offense level shall be the same as if the object of the conspiracy or attempt had been completed.[1]

The object of the conspiracy was to possess with intent to distribute 966 pounds,

1. Application Note 1 to § 2D1.4 provides in part:

   If the defendant is convicted of an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount.

plus the next largest bale of marijuana. Under § 2D1.1(a)(3), there is a Drug Quantity Table which establishes a BOL of 28 for possession with intent to distribute between 400 and 699 kilograms of marijuana. The weight of the marijuana that the defendants conspired to possess and distribute was within this range. Therefore, the use of a BOL 28 was proper on Count 1.

Roberts claims that the statements contained in the presentence report, the use of uncorroborated hearsay statements of a DEA informer, and the consideration of two state court informations charging him with conspiracy to distribute marijuana denied him his constitutional right of confrontation. The statements in the presentence report were:

Roberts is a known, identified, major marijuana distributor in the Baltimore, Maryland area. The entire $372,000 is believed by authorities to have belonged to Roberts, and was brought by him personally to consummate the drug deal on December 2, 1987.

Roberts acted as financier and principal recipient. While he definitely assumed a lead role in the drug deal, his culpability in the overall offense would seem to be next to Thompson. Without Thompson, Roberts would not have been there.

At the sentencing hearing DEA Officer Rivello related that he had been told by one Jeffrey Blinken, who had been incarcerated from 1980 to 1985, that he had supplied marijuana to Roberts in the middle and late 1970s and had one or two purchases or sales with Roberts in 1986 or 1987. Rivello also stated that there were taped telephone conversations between Roberts and Blinken in 1970. On cross examination Officer Rivello admitted that he did not know Roberts, and the first time he had seen him was in the courtroom at sentencing. The officer also admitted that he never listened to the taped telephone conversations, nor had he read a transcript of these tapes, but

that his information had come from another officer. He admitted that he had not prepared or filed a DEA Form 6 of his interviews with Blinken, and he had not sought to obtain a warrant for the arrest of Roberts based on the information he obtained from Blinken. He admitted that he had no corroboration for Blinken's statements.

After receiving evidence and hearing arguments on the proper sentence, the district judge stated:

As to the unresolved matter, the court's findings is as follows: We find that during the course of the trial, the defendant, Thompson, while on tape, indicated that he had dealt with Mr. Roberts for a long period of time and had come to trust him in his drug dealings. Mr. Roberts' actions also on tape, suggest a certain and clear expertise in drug deals, and he particularly indicated complete control of himself in the events surrounding the particular drug deal in this matter.

In addition to that, the pending charges in Carroll County, the information we have received regarding the wiretap information, as well as the admittedly hearsay evidence coming from the informant on through the witness, Officer Rivello, convinces the court that the statement that Roberts is a known, identified major marijuana distributor in the Baltimore, Maryland area is fair and accurate and it will be accepted and considered.

Hearsay evidence has long been allowed in sentencing proceedings, 18 U.S.C. § 3661 (West 1985).[2] This statute was originally adopted in 1948. The Federal Rules of Evidence restricting hearsay do not apply to sentencing proceedings. Federal Rule of Evidence 1101(d)(3).

The new sentencing guidelines at § 6A1.3(a) provide:

(a) When any factor important to the sentencing determination is reasonably in

---

**2.** 18 U.S.C. § 3661. Use of Information for Sentencing.

No limitation shall be placed on the information concerning the background, character, and

conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor. In resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.

In the Commentary to this Section, it is stated:

In determining the relevant facts, sentencing judges are not restricted to information that would be admissible at trial. 18 U.S.C. § 3661. Any information may be considered, so long as it has "sufficient indicia of reliability to support its probable accuracy". *United States v. Marshall*, 519 F.Supp. 751 (D.C.Wis. 1981), *aff'd*, 719 F.2d 887 (7th Cir.1983); *United States v. Fatico*, 579 F.2d 707 (2d Cir.1978). Reliable hearsay evidence may be considered. Out-of-court declarations by an unidentified informant may be considered "where there is good cause for the nondisclosure of his identity and there is sufficient corroboration by other means". *United States v. Fatico*, 579 F.2d at 713. Unreliable allegations shall not be considered. *United States v. Weston*, 448 F.2d 626 (9th Cir.1971).

■ Although some of the information considered by the district judge in finding that Roberts was a "known, identified major marijuana distributor in the Baltimore, Maryland area" was hearsay of questionable reliability and criminal charges that were subsequently dismissed, the court's finding is well supported by other reliable information. The court had the benefit of and made reference to the testimony admitted during the trial of the case including particularly the video tapes of the discussions and negotiations between Roberts and the DEA agents at the farm in Powhatan County, Virginia on the night of the arrest. In *United States v. Bernard*, 757 F.2d 1439, 1444 (4th Cir.1985), we held that a sentencing court may consider crimes of which a defendant has been charged and also criminal charges of which he has been acquitted.

The BOL was increased under § 3B1.1. which provides:

Based on the defendant's role in the offense, increase the offense level as follows: (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

■ The evidence at trial was sufficient to justify the court's finding that the defendant was an organizer and leader of the criminal activity and that it was extensive. We find no error in the use of the BOL of 28 and the increase of 4 levels because of appellant's leadership position in an extensive criminal activity. There is no appeal from the reduction of 2 points that established an offense level total of 30.

The court sentenced Roberts at the top of the guideline, 121 months, and in doing so made the following finding:

Justification for the above sentence is that the period of incarceration at the top end is imposed due to the seriousness of the particular offense and the court's belief, based on the trial record and other information received, that the defendant has had extensive involvement in this kind of criminal behavior before; in fact, over a long period of years. And in the court's estimation, the sentence is appropriate to serve the objectives of punishment and deterrents.

Once the guideline range has been established, information that may be considered by the court is governed by § 1B1.4: "In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law."

■ This section is designed to give the sentencing court the same discretion that it has always possessed under 18 U.S.C. § 3661. All of the information considered by the district judge in deciding to sentence

at the top of the guideline was proper under 18 U.S.C. § 3661 and Guideline § 1B1.4. A sentence within the correct guideline range is not subject to review under 18 U.S.C. § 3742. The present sentences were the result of proper application of the new sentencing guidelines. All convictions and sentences are

AFFIRMED.