911 F.2d 725
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert L. CLARK, Defendant-Appellant.
 No. 89-5903.
 United States Court of Appeals, Fourth Circuit.
 Argued June 8, 1990.
Decided July 31, 1990.
As Amended Oct. 12, 1990.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. J. Calvitt Clarke, Jr., District Judge. (CR-89-84-N).
 George Andrew Neskis, Christie, Held & Kantor, Virginia Beach, Va., (argued), for appellant; Chris A. Christie, Christie, Held & Kantor, Virginia Beach, Va., on brief.
 Laura Marie Everhart, Assistant United States Attorney, Norfolk, Va., (argued), for appellee; Henry E. Hudson, United States Attorney, Norfolk, Va., on brief.
 E.D.Va.
 AFFIRMED.
 Before SPROUSE, CHAPMAN and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Robert L. Clark appeals from a district court judgment entered after a jury convicted him of conspiring to possess cocaine with intent to distribute and of using a telephone to facilitate the possession of cocaine with intent to distribute. See 21 U.S.C. Secs. 846 & 843(b). Clark primarily challenges the sentence imposed by the district judge, but also contests the introduction of certain evidence at trial. We affirm.
 
 
 2
 * On May 23, 1989,[1] at the Port of Charleston, South Carolina, a routine inspection of containers shipped from Panama and destined for Norfolk, Virginia, uncovered cocaine concealed in the television set of Navy enlistee Enrique Gayle. An examination of Gayle's other household goods revealed ninety-five packages of cocaine carefully packed into various pieces of furniture. Each package of cocaine weighed approximately a kilogram. A microwave oven which figures prominently in this case contained several kilograms of cocaine. Gayle's possessions and the cocaine were delivered to the Norfolk office of the Drug Enforcement Administration (DEA).
 
 
 3
 DEA inspectors traced the address on Gayle's Virginia driver's license application to a house owned by appellant/defendant Robert Clark and one Nadine Chapman. Clark and Chapman had traveled to Panama a few months earlier.
 
 
 4
 On May 25, a woman telephoned the personal property shipping office at the Norfolk Naval Supply Center, identified herself as Mrs. Gayle, and inquired about Gayle's goods. She left a phone number where "Gayle" could be reached. The caller was Gloria Garrett, an employee of Clark's. The number she provided was listed to Sophia Roberts, a native of Panama and a friend of Clark's.
 
 
 5
 In early June, Mrs. Garrett and Clark picked up Gayle at the Norfolk airport and Gayle moved into an apartment with Clark. In the following weeks, Mrs. Garrett and her husband, Joseph Garrett, heard Gayle and Clark discuss a shipment of cocaine that they were expecting to arrive from Panama.
 
 
 6
 Government officials planned to make a controlled delivery of the household goods and drugs to Gayle. On June 13, they telephoned the number left by Mrs. Garrett and advised the woman who answered that the furniture had arrived and that Gayle should call to arrange delivery. When the call was not returned by June 30, the day Gayle reported to his duty station in Norfolk, DEA agents became concerned that the investigation had been compromised and therefore developed an alternate plan.
 
 
 7
 On July 3, DEA Special Agent Floyd Baker called the number left by Mrs. Garrett, pretending to be an employee of a moving company. Two days later, Clark called the Naval Supply Center, identified himself as Gayle, scheduled a July 7 delivery of the household goods, and contacted Baker. Baker told him that customs agents had inspected Gayle's crates and suggested a meeting. At that meeting, Baker advised Clark that agents had found the drugs, but that Baker and a co-worker had removed a microwave oven which he would deliver to Clark for a fee. Clark agreed that he or his representative would take delivery of the oven on July 6. However, the next day, Clark told Baker that he no longer wanted the oven and its contents.
 
 
 8
 On July 7, Mrs. Garrett dropped off Clark and Gayle at the Clark/Chapman house to await delivery of Gayle's possessions. A man named Tony, who was an associate of Clark's, was there to assist them. After waiting all morning for the household goods to arrive, Clark called the Naval Supply Center to inquire about the delay, identifying himself as Gayle's superior officer. He was informed that the furniture had been seized and was provided with the name and telephone number of a customs agent. Clark called Customs and received confirmation that the shipment had been seized.
 
 
 9
 Clark then contacted Mrs. Garrett and asked her to obtain the microwave oven from Baker. Clark told her to take her husband with her when she picked up the cocaine from the microwave and gave her detailed instructions regarding the delivery. Mr. and Mrs. Garrett expected to receive cocaine as payment for their assistance. The couple drove to a restaurant to rendezvous with Baker, who was sitting in his car in the parking lot. Mrs. Garrett approached Baker, who gave her a bag containing three kilograms of cocaine. After Mrs. Garrett took the bag to her car, she and her husband were arrested.
 
 
 10
 On July 19, a federal grand jury returned a four-count indictment against the Garretts and Clark. The Garretts agreed to cooperate with the government and entered guilty pleas. Clark was tried before a jury and convicted on two counts: conspiring to possess cocaine with intent to distribute and of using a telephone to facilitate the possession of cocaine with intent to distribute. He was sentenced on the conspiracy count to 360 months imprisonment followed by five years of supervised release, fined $9,000, and orderd to pay a $50 assessment. Clark received a concurrent 48-month term on the telephone facilitation count with one year of supervised release and was ordered to pay an additional $1,000 fine and $50 assessment.
 
 II
 
 11
 On appeal, Clark principally contends that the district court erred in calculating his prison term under the Sentencing Guidelines,[2] first by using the wrong base offense level and then by improperly enhancing his sentence.
 
 
 12
 He asserts that, in setting his base offense level, the court erroneously counted the entire ninety-five kilograms of cocaine concealed in Gayle's household goods, rather than the smaller amount hidden in the microwave oven.[3] Generally, "[i]f a defendant is convicted of a conspiracy ... involving a controlled substance, the offense level shall be the same as if the object of the conspiracy ... had been completed." U.S.S.G. Sec. 2D1.4(a); United States v. Roberts, 881 F.2d 95, 104-05 (4th Cir.1989); see also U.S.S.G. Sec. 1B1.3. However, Clark relies on guideline commentary stating:
 
 
 13
 Where it is established that the conduct was neither within the scope of the defendant's agreement, nor was reasonably foreseeable in connection with the criminal activity the defendant agreed to jointly undertake, such conduct is not included in establishing the defendant's offense level under this guideline.
 
 
 14
 U.S.S.G. Sec. 1B1.3 comment. (n. 1); see also U.S.S.G. Sec. 2D1.4(a) comment. (n. 1). Clark claims his knowledge of the conspiracy was confined to the three kilograms which Baker delivered to Mrs. Garrett and that "the cocaine contained in the furniture, other than the microwave oven, was neither within the scope of the defendant's agreement with the Garretts, nor was reasonably foreseeable...."
 
 
 15
 This is an attack on the trial court's factual finding, which we review under the "clearly erroneous" standard. United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir.1989). In our view, the extensive evidence of Clark's efforts to obtain Gayle's entire furniture shipment, catalogued supra, more than supports the district court's determination that Clark should be held responsible for the entire ninety-five kilograms of cocaine.
 
 
 16
 Clark next complains that the district court erred in increasing his offense level by four steps upon finding that he "was an organizer or leader of a criminal activity that involved five or more participants...." U.S.S.G. Sec. 3B1.1(a). Clark claims that, at most, he and the two Garretts were involved. This argument ignores the evidence concerning Gayle's involvement and Tony's presence at Clark's home the day of the anticipated drug delivery. Thus, the district court did not clearly err in concluding that Clark was the leading and predominant figure in the conspiracy, directing the activities of at least four co-conspirators.
 
 
 17
 The district court also increased Clark's offense level by two because he had "willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense...." U.S.S.G. Sec. 3C1.1. The probation officer preparing Clark's presentence report testified that Clark had attempted to conceal his financial interests in various properties and businesses. The district court evaluated this evidence "in a light most favorable to the defendant," see U.S.S.G. Sec. 3C1.1 comment. (n. 2), but found nevertheless that Clark had attempted to impede the administration of justice. Again, we conclude that there was sufficient evidence to support the district court's finding.
 
 III
 
 18
 Finally, Clark argues that the trial court erred in allowing Mrs. Garrett to testify that he was a cocaine user. He submits that this evidence was introduced solely for the impermissible purpose of showing his propensity to commit the crime. Fed.R.Evid. 404(b). However, such evidence may be admitted when, as in the present case, it establishes the context for the crime charged. United States v. Masters, 622 F.2d 83, 87 (4th Cir.1980). In our view, the district court did not abuse its discretion in admitting evidence of Clark's cocaine use.
 
 IV
 
 19
 In view of the above, the judgment of the district court is affirmed.
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 All events occurred in 1989, unless otherwise noted
 
 
 [2]
 United States Sentencing Commission, Guidelines Manual (Nov. 1989)
 
 
 [3]
 The court set Clark's base offense level at 36. He urges that the proper level is 28. Compare U.S.S.G. Sec. 2D1.1(c)(4) and Sec. 2D1.1(c)(8) (base offense levels for various quantities of drugs)