981 F.2d 1252
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of AMERICA, Plaintiff-Appellee,
v.
Steve Dionel WHITE, Defendant-Appellant.
 No. 92-5253.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: November 11, 1992
Decided: December 16, 1992
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Richard B. Kellam, Senior District Judge. (CR-91-172)
 Reuben S. Hill, Jr., SAMS & HILL, P.C., for Appellant.
 Richard Cullen, United States Attorney, Ronald Batliner, Jr., Special Assistant United States Attorney, Norfolk, Virginia, for Appellee.
 E.D.Va.
 Affirmed.
 Before HALL, MURNAGHAN, and WILLIAMS, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Steve Dionel White appeals his jury conviction for conspiracy to distribute and to possess with intent to distribute more than five grams of "crack" cocaine, in violation of 21 U.S.C.s 846 (1988). On appeal, White argues there was insufficient evidence to convict him of the conspiracy charge because there was no evidence of any illegal agreement among the three Defendants. Finding no merit in this argument, we affirm the conviction.
 
 
 2
 A federal grand jury indicted White and two other Virginia Beach, Virginia, residents on the conspiracy count and one count of possession of cocaine base with intent to distribute, in violation of 21 U.S.C.A. § 841 (West 1988 & Supp. 1992). After a two-day trial with co-Defendant Ernest Miles, the jury convicted White on the conspiracy charge, but found him not guilty of the possession count. CoDefendant Lloyd Snowden pled guilty to the conspiracy charge in exchange for the Government's dropping the possession charge, and Snowden testified at the trial.
 
 
 3
 Testimony from Snowden and two undercover Portsmouth, Virginia, detectives disclosed Snowden's efforts to sell a half ounce of "crack" to the two detectives in return for $650 from the agents on the night of October 21, 1991, and the morning of October 22, 1991. An aborted drug delivery in a Virginia Beach parking lot was followed some two hours later by the three Defendants' arriving in Portsmouth in a car together and delivering 12.49 grams of crack in two plastic sandwich baggies. Snowden, White, and Miles were arrested immediately after the transaction.
 
 
 4
 The district judge withheld ruling on acquittal motions after the Government presented its case, then denied the motions after the defense rested. After the jury verdict, the district judge denied White's motions for a directed verdict, a judgment of acquittal, and for immediate sentencing. White was subsequently sentenced to eighty-eight months in prison.
 
 
 5
 White raises as his sole issue on appeal that the evidence was insufficient to sustain his drug conspiracy conviction. An appellate court will uphold a jury verdict, under challenge for insufficiency of the evidence, if a rational jury could find the essential elements of the crime beyond a reasonable doubt, viewing the evidence in the light most favorable to the Government. Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 6
 To support a conspiracy conviction, the Government must prove (1) an agreement or conspiracy (2) that the defendant knew of and (3) voluntarily joined. United States v. Mabry, 953 F.2d 127, 130 (4th Cir. 1991), cert. denied, 60 U.S.L.W. 3780 (U.S. 1992). The Government does not need to prove an overt act and may rely on circumstantial evidence. Id. A defendant does not need to possess complete knowledge of every aspect of the conspiracy. Id. The agreement supporting the conspiracy may be shown by the totality of the circumstances, id., or by a tacit or mutual understanding among or between the parties. United States v. Depew, 932 F.2d 324, 326 (4th Cir.), cert. denied, 60 U.S.L.W. 3263 (U.S. 1991). One may become a member of a conspiracy without full knowledge of the details, but if he joins with an understanding of its unlawful nature and willfully joins in the plan on one occasion, he may be convicted of conspiracy though he played only a minor role and never participated before that incident. United States v. Roberts, 881 F.2d 95, 101 (4th Cir. 1989).
 
 
 7
 Frank Chappell, one of the detectives working for the federal Drug Enforcement Administration, testified that on October 21, 1991, he and Snowden agreed to the sale of a half ounce of cocaine for $650. They agreed to do business in a Virginia Beach food store parking lot. After several delays and telephone calls, Chappell and another detective arrived in Virginia Beach and were met in the parking lot by Snowden and White, whom Snowden referred to as his"partner." Chappell said White suggested that White remain with the agents and assured them they would not be "ripped off" and that no one would harm them while Snowden went off to purchase the drugs. White entered the agents's pick-up truck and directed them first to the Pavilion Club, then later to the Radisson Hotel. On the way to the hotel, White pointed to some houses and told the agents he could purchase the same drug for the same price there, but Chappell refused the offer.
 
 
 8
 During a twenty-minute wait, White told Chappell he knew that Snowden had "shorted" Chappell in a drug deal the previous month, said he and Snowden had been dealing drugs together for some time, and offered to retrieve some drugs for Chappell if Snowden did not return soon. White also asked for Chappell's pager number when Snowden did not return. After midnight, however, Snowden paged Chappell and told the agent he had a half ounce which he would not have for long. They agreed to meet in Portsmouth. White, Snowden, and Miles drove to Portsmouth and parked the car adjacent to the agents's truck. White sat in the rear seat. After Snowden turned over two plastic baggies containing "rocks" of cocaine, Chappell paid Snowden $650, and the three were arrested.
 
 
 9
 Snowden's testimony may have aided White's defense. Snowden told the jury that he never specifically told White that he was selling cocaine to Chappell, but that White was present and heard Chappell ask Snowden for the drugs. Snowden also said that he usually worked alone, though he considered himself a drug "runner." He also testified that when the trio left Virginia Beach for Portsmouth, Miles and White probably did not know where they were going. Snowden also testified that White never helped him sell drugs before and that White was not his partner.
 
 
 10
 White testified that he was not aware that Chappell wanted to buy cocaine until he and Snowden met the agents in Virginia Beach and Snowden and the agent began talking. A detective with the Chesapeake Police Department read to the jury the statement White gave authorities several days after his arrest. In that statement, White admitted that he smoked drugs, that he stopped someone on a bicycle hoping that individual could help the agents purchase some drugs, and that he knew Snowden had "shorted" the agent in a deal the previous month.
 
 
 11
 The jury heard sufficient evidence to find an agreement existed among Miles, Snowden, and White to obtain cocaine for the two undercover agents. Snowden testified that Miles ultimately provided the half-ounce used in the Portsmouth transaction. Testimony showed that White made various offers to find cocaine for the agents, such as stopping an acquaintance riding a bicycle and offering to visit an ocean front neighborhood, at the time Snowden was elsewhere in search of a supply for the transaction. Though Snowden's testimony tends to support White's defense that he was generally ignorant of what was occurring, the jury could believe Chappell's testimony that Snowden referred to White as his "partner," that White told the agents he and Snowden had been drug dealing for some time, and that he was aware of Chappel's prior sour deal with Snowden. The credibility of witnesses is a matter within the jury's province and will not be reviewed. United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989). There was also evidence that White acted as a lookout in Virginia Beach, when he stayed with the agents for twenty minutes and directed them to either the site of the planned sale or to a safe haven away from violence or the police. A jury could rationally infer from all the circumstances that White knowingly and voluntarily joined a plan to sell cocaine to the two drug agents. It is immaterial that White played only a minor role in the conspiracy and was ignorant of some details; the evidence showed he knew the agents wanted to buy cocaine and he willingly joined in a plan to provide them with it. See Roberts, 881 F.2d at 95, 101.
 
 
 12
 Therefore, we affirm White's conviction. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED