UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 95-5658

ELAN CHRISTOPHER LEWIS, a/k/a
Jamal Xavier Harris,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CR-94-94)

Argued: November 1, 1996

Decided: December 17, 1996

Before HALL and LUTTIG, Circuit Judges, and THORNBURG,
United States District Judge for the Western District
of North Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Raymond Archie Carpenter, Jr., BOONE, BEALE, CAR-
PENTER & COSBY, Richmond, Virginia, for Appellant. David T.
Maguire, Richmond, Virginia, for Appellee. **ON BRIEF:** David E.
Boone, BOONE, BEALE, CARPENTER & COSBY, Richmond, Vir-
ginia, for Appellant. Helen F. Fahey, United States Attorney, Sara E.
Heath, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Elan Christopher Lewis was sentenced to life without parole on the basis of convictions on one count of money laundering, four counts of drug distribution, and two counts involving firearms. On appeal, he attacks the sufficiency of the evidence on four of the counts. He also challenges how his offense level was calculated under the Sentencing Guidelines. We find no error, and we affirm.

I

The district court adopted the probation officer's calculation of the total offense level: To a base offense level of 38 (USSG § 2D1.1(a)(3)(c)(1) (Nov. 1994), more than 1.5 kg. of cocaine base) was added four levels for Lewis's leadership role in the offense (USSG § 3B1.1(a)) and two levels for obstruction of justice (USSG § 3C1.1). The resulting total offense level of 44 mandated a sentence of life without parole. On appeal, Lewis disputes only the addition of two offense levels for obstruction of justice.

USSG § 3C1.1 calls for an increase of two levels "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense . . . ." In the presentence report, the probation officer recommended the obstruction points on the basis of "the government records" that reflected that after his arrest, Lewis phoned Preston, who was cooperating with the police, and asked him to "lie to law enforcement authorities about their drug activities." Lewis objected on the ground that there was insufficient evidence to support the allegation.

Two hearings were held. At the first one, Detective McNamara testified that he met with Preston a few weeks after Lewis had been

2

arrested in October 1994. According to the officer, Preston said that Lewis had called him at work and asked him what he was going to say; when Preston replied "the truth," Lewis said "not to tell him anything, to disavow any knowledge of him being involved, and that he shouldn't tell them anything about their drugs or anything else." At the second hearing, Detective McNamara was cross-examined but could not be budged from his story. He did admit, however, that he had made no contemporaneous written report of his conversation with Preston.

Preston, who was called as a government witness, testified that he received a call from Lewis and that "he just told me he was locked up and to help him if I could." Pressed lightly by the government counsel, he repeated that Lewis said "to help him if I could." Asked what he understood that request to mean, Preston replied, "I guess don't tell on him, to help him out if I could in any way" and "not testify." He also testified that he reported this conversation to the police. There was no cross-examination by Lewis's counsel.

The court may consider any information, including hearsay testimony, as long as it has a "sufficient indicia of reliability to support its probable accuracy." USSG § 6A1.3, p.s., comment.; see United States v. Roberts, 881 F.2d 95, 105-06 (4th Cir. 1995). Although Preston's recital of what Lewis told him during the telephone call--to help if he could--may be open to an interpretation other than that Lewis was asking his coconspirator to lie, the court was free to consider the detective's testimony as well. We give due deference to the sentencing court's finding on this "essentially factual" matter and will overturn it only for clear error. United States v. Daughtrey, 874 F.2d 213, 217-18 (4th Cir. 1989). We find no clear error in the district court's conclusion that Lewis attempted to obstruct the investigation.

II

Count III alleged the distribution of more than 50 grams of cocaine base "in or about July 1992." Mittledorfer Taylor, a coconspirator, testified about a transaction involving the sale of nine ounces of crack cocaine at a car wash near Richmond. Lewis argues that Taylor's testimony was the only link to the alleged incident and that such testimony is insufficient to prove when and where the incident took place.

We must sustain a verdict "if there is substantial evidence, taking the view most favorable to the Government, to support it." <u>Glasser v. United States</u>, 315 U.S. 60, 80 (1942). Under this standard, we find that the evidence is sufficient as to time and place. Taylor testified that Lewis, who was one of his major suppliers, showed up at a car wash in Chesterfield in a black Nissan 300-ZX, and the government later proved that Lewis was involved in the purchase of such a car on July 18, 1992. Taylor was arrested on August 12, 1992, so the deal must have occurred before then. Another participant in the car wash deal, Parker, corroborated Taylor's testimony.

III

Three counts involve a drug deal near Richmond on July 29, 1994: VII--distribution of more than fifty grams of crack; VIII--use of a firearm in relation to a drug crime; and IX--possession of a firearm by a convicted felon. Lewis also attacks the sufficiency of the evidence to sustain these convictions.

Herbert Lee testified that he bought four and one-half ounces of crack from Lewis about two weeks before Lewis's arrest on August 6, 1994. The deal took place at a car wash a few miles south of Richmond in Chester, Virginia. During the deal, Lewis pointed a semi-automatic weapon at Lee's head and told him to "get my money straight." We find this sufficient evidence to support each of the convictions.

<u>AFFIRMED</u>

4