911 F.2d 725
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Dennis HOLLAND, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Herman M. VIA, Sr., Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
James Otis WALTON, Jr., Defendant-Appellant.
 Nos. 89-5427 to 89-5429.
 United States Court of Appeals, Fourth Circuit.
 Argued May 10, 1990.
Decided Aug. 3, 1990.
Rehearing and Rehearing In Banc Denied Aug. 28, 1990.
 
 Appeals from the United States District Court for the Western District of Virginia, at Roanoke. Jackson L. Kiser, District Judge. (CR-88-72-R; 88-87-R)
 Michael Morchower, Morchower, Luxton and Whaley, Richmond, Va., Gilbert Kenneth Davis, Davis and Tuttle, Vienna, Va., Alton Bishop Prillaman, Jolly, Place, Fralin & Prillaman, Roanoke, Va.; for appellants; Lauren Adler, Morchower, Luxton and Whaley, Richmond, Va., on brief.
 Julie Marie Campbell, Assistant United States Attorney, Roanoke, Va., (argued) for appellee. John P. Alderman, United States Attorney, Morgan E. Scott, Jr., Assistant United States Attorney, Roanoke, Va., on brief.
 W.D.Va.
 AFFIRMED.
 Before ERVIN, Chief Judge, K.K. HALL, Circuit Judge, and DUPREE, Senior United States District Judge for the Eastern District of North Carolina, Sitting by Designation.
 PER CURIAM:
 
 
 1
 In this consolidated appeal, Dennis Holland, James Otis Walton, Jr., and Herman Via, Sr., attack their convictions and/or sentences for various drug offenses arising out of two separate conspiracies. In the first action (the Martinsville conspiracy) Holland and Walton contend the evidence was insufficient to convict them of three different drug charges. In the second action (the Roanoke conspiracy) Holland and Via appeal the sentences they received after pleading guilty to one count each of conspiracy to distribute marijuana, cocaine and crack. For the reasons set forth below, we reject the defendants' contentions and affirm the convictions and resulting sentences.
 
 I.
 
 2
 Evidence from the trial in the Martinsville conspiracy demonstrated that from June 1 to July 22, 1988, drug agents tapped the telephones of Walton and Holland. These wiretaps showed frequent calls from an apartment subleased to Walton in Martinsville, Virginia, to the Bronx, New York, residence of a Bernard Estrella. On July 21, 1988, Holland placed two telephone calls from the apartment to Estrella. Because Estrella spoke little English, Luz Del Carmen Zamora, who lived with Estrella and his family, acted as an interpreter. Based on what Estrella told her, Zamora testified that the substance of the conversations with Holland concerned "their business ... [d]rugs ... [c]ocaine." There was also mention of an upcoming trip to Virginia.
 
 
 3
 The following morning, after receiving two calls from Zamora, Holland and Walton drove separately to the Greensboro, North Carolina, airport. They arrived there around 11:00 a.m. and Walton went inside the terminal where a drug agent observed two Hispanic males, later identified as Estrella and Perez, leaving a plane. The agent noted that one of the two nodded at Walton. A few minutes later, agents observed the Holland and Walton vehicles side by side, each with a passenger. The vehicles then left the airport.
 
 
 4
 At 1:41 p.m., Walton arrived at his apartment in Martinsville followed by a man driving a brown Buick. The two entered the apartment but Walton returned to his truck moments later, obtained a blue suitcase and returned to the apartment. Holland soon arrived with two Hispanic males. The driver of the Buick then left the apartment and went to his car across the street. Walton walked outside to his truck, opened the tailgate, and walked over to the man sitting inside the Buick. Walton handed a small white object to the man in the Buick, who then drove away.
 
 
 5
 Holland and the two Hispanic males left the apartment and went to the Best Western Motel in Collinsville where Holland checked them into Room 127. Holland then returned to the apartment accompanied by another man. Holland was holding a blue bank bag. At 4:05 p.m., the two hurriedly left the apartment and drove away. Police arrived soon after the searched the apartment. Among other things, they found cocaine hidden in the ceiling of the linen closet and in a kitchen cabinet. Estrella's fingerprint was identified on the cocaine package found in the linen closet. At 4:30 p.m., police arrested Perez and Estrella at the Best Western Motel in Room 127 and searched their room. They found airline tickets originating from LaGuardia Airport. Holland and Walton were arrested thereafter and a key to Room 127 was found on Holland.
 
 
 6
 On January 10, 1989, after hearing this evidence as well as the substance of several taped telephone conversations, a jury found Walton and Holland guilty of: (1) conspiracy to possess with the intent to distribute more than one kilogram of cocaine in violation of 21 U.S.C. Sec. 846; (2) possessing with the intent to distribute one and one-half kilograms of cocaine in violation of 21 U.S.C. Sec. 841(a)(1); and (3) traveling in interstate commerce or aiding and abetting others in traveling in interstate commerce to promote a narcotics business in violation of 18 U.S.C. Secs. 1952 and 2. Walton was sentenced to a prison term of seventy months and Holland was sentenced to one hundred fifty-one months after consolidation of his offenses with his conviction in the second action.
 
 A.
 
 7
 In determining whether the evidence was sufficient to convict Walton and Holland, we must view the evidence in the light most favorable to the government. Glasser v. United States, 315 U.S. 60 (1942). The central element of a drug conspiracy is an agreement to violate the federal narcotics laws. United States v. Carcaise, 763 F.2d 1328 (11th Cir.1985). The existence of this agreement may be demonstrated by circumstantial evidence. Id.
 
 
 8
 The evidence indicated a close association between Walton and Holland. Holland had access to the apartment subleased by Walton and frequently used the phone there to call Estrella in New York. Moreover, the discussions on July 21, 1988, concerned the cocaine business and there was mention of an upcoming trip to Virginia. The next morning, Holland and Walton both drove to the airport and picked up Estrella and Perez after receiving telephone calls from Zamora. Estrella's fingerprints were ultimately found on one of the bags of cocaine taken from the apartment. In addition, a photograph developed from a camera seized from Holland's car showed Estrella standing outside the Martinsville apartment. Holland was found with the key to Room 127 which he had rented for Estrella and Perez.
 
 
 9
 Based on this evidence, the jury was justified in finding that the primary purpose of the trip was to bring cocaine to Holland and Walton and that there was an agreement to violate federal narcotics laws. It is quite clear that Holland played a major role in the transaction and that the conspiracy was advanced by Walton by the use of the subleased apartment and by his meeting Estrella and Perez at the airport.
 
 
 10
 A defendant may be convicted of conspiracy even though he does not have full knowledge of all the details and plays only a minor role where he willfully joins in the plan with knowledge of its illegal purpose. United States v. Roberts, 881 F.2d 95, 101 (4th Cir.1989). While Walton may not have known of all the details of the transaction, he certainly participated in helping to bring Estrella and Perez to Martinsville. Accordingly, we hold there was sufficient evidence to find Holland and Walton guilty of the conspiracy charges.
 
 B.
 
 11
 Holland and Walton next argue that because there was no evidence that either of them actually lived in the apartment, the government has failed to show constructive possession of the cocaine. Constructive possession exists when a defendant exercises or has the power to exercise dominion and control over an item. United States v. Roberts, supra.
 
 
 12
 While mere presence on the premises where drugs are found, or association with one who possesses drugs is insufficient to establish possession, United States v. Samad, 754 F.2d 1091, 1096 (4th Cir.1984), the facts of the instant case demonstrate more. Walton subleased the apartment and Estrella's fingerprints link the package found in the linen closet to Walton and Holland. Both defendants went to the airport where they picked up Perez and Estrella. Both defendants had keys to the apartment and the wiretaps indicate numerous calls to Estrella's apartment by Holland. As well, in searching the apartment, police found phone bills addressed to Holland at his home address, a phone bill addressed to Walton at the apartment's address, and a triple beam balance scale. While there was evidence that others used the apartment, it certainly was not necessary for the government to demonstrate that Walton and Holland used the apartment exclusively. Accordingly, there was sufficient evidence to convict the defendants of possession with the intent to distribute the cocaine.
 
 C.
 
 13
 We need not tarry long on the sufficiency of the evidence used to convict the defendants of the interstate travel charges. The evidence demonstrated that Holland and Walton drove from Martinsville to Greensboro, North Carolina, to pick up Estrella and Perez who had flown in from New York City. When this evidence is linked to the drugs found in the apartment and the discussions concerning a trip to Virginia, the jury could have reasonably found travel, or aiding or abetting travel, in interstate commerce with the intent to promote an unlawful activity and a subsequent promotion or attempt to promote the activity. See United States v. Monu, 782 F.2d 1209, 1211 (4th Cir.1986).
 
 II.
 
 14
 In the Roanoke conspiracy, Holland and Herman Via, Sr., appeal the sentences they received after they pled guilty to conspiracy to possess with the intent to distribute marijuana, cocaine and crack in violation of 21 U.S.C. Sec. 841(a)(1). After consolidating Holland's conviction pursuant to his guilty plea with the conviction he received in the Martinsville conspiracy, the trial court arrived at a base offense level of 26 which was enhanced four levels for Holland's leadership role, producing a total offense level of 30. The court assigned Via a base offense level of 26, added two levels for the possession of a dangerous weapon during the offense, added four levels for his leadership role and subtracted two levels for his acceptance of responsibility, yielding a total offense level of 30. The trial judge sentenced Holland to one hundred fifty-one months, which was near the top of the guideline range for his offenses, and Via to one hundred thirty-one months, ten months above the minimum of his guideline range.
 
 
 15
 The guilty pleas arose in part out of a "reverse sting" operation in which Via agreed to purchase marijuana from undercover agents. Although there was conflicting evidence concerning the amount of the marijuana, at least some testimony at the sentencing hearing indicated that Via agreed to purchase a minimum of 220 pounds of the drug and to supply undercover agents with one ounce of cocaine. Holland provided $30,000 with which to fund in part the purchase of the marijuana. In addition, a government agent dealing with Via indicated there would be extra marijuana available to trade for any guns brought to the transaction. On June 8, 1988, Via, along with several others, met government agents at the Roanoke, Virginia, airport. Via paid the agents $42,500 and furnished them with a shotgun and revolver in exchange for additional marijuana. Three bales of the drug were loaded inside the van brought by Via and a fourth was on the ground beside the van when Via was arrested. Also found near the van was a bag containing one ounce of cocaine.
 
 A.
 
 16
 Holland and Via argue that the trial court erred in computing their base offense level at 26 because: only the drugs negotiated and actually paid for should have been considered; the government failed to adequately prove the weight of the marijuana; they should not be credited for amounts of cocaine for which they were not indicted or where the indictments were dismissed; and due process and separation of powers protections were violated when the amount of the drugs sold and number of indictments issued were all controlled by the executive branch of the government.
 
 
 17
 To calculate the base offense level for conspiracies, the negotiated weight in an uncompleted distribution is used to determine the base offense level. Roberts, 881 F.2d at 104 n. 1 (citing U.S.S.G. Sec. 2D1.4). Although the evidence was conflicting, testimony from an undercover agent indicated that the negotiated amount was for 220 pounds of marijuana. Additional marijuana was to be available on a nearby plane. At the time of the arrest, three bales of marijuana had been loaded in the van and an additional bale was on the ground beside the van. The trial court determined that it could not charge defendants with all the marijuana that was available (384 pounds) and chose instead to credit defendants with the negotiated amount, which he determined were the three bales weighing 189 pounds that were actually loaded in the van. In so doing, the trial judge stated he was giving defendants the benefit of the doubt and did not include the bale on the tarmac beside the van. It was not necessary to reduce the amount credited to defendants because there was no determination as to the purity of the marijuana. See United States v. Baker, 883 F.2d 13 (5th Cir.), cert. denied, 110 S.Ct. 517 (1989).
 
 
 18
 In reviewing the sentencing court's factual findings, we are governed by the clearly erroneous standard. United States v. White, 875 F.2d 427, 431 (4th Cir.1989). The court's finding as to the amount of marijuana negotiated appears, if anything, to have favored the defendants. A government agent testified that the numbers on the sides of the bales represented their respective weights and with no other evidence appearing, it was proper for the trial court to use these numbers in calculating the weight of the marijuana. Under these circumstances, the trial court's finding as to the amount of marijuana negotiated in determining the base offense level was not clearly erroneous.
 
 
 19
 Defendants next argue they should not be credited with amounts of cocaine where charges against them were dismissed or where they were not indicted on charges relating to the cocaine. In determining relevant conduct under U.S.S.G. Sec. 1B1.3, the "quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." United States v. Williams, 880 F.2d 804, 805, 806 (4th Cir.1989). The record indicates several cocaine sales by Via and his sons during the time from February until June 1988, when they were arrested at the airport. While only one of these sales was by Via personally, it is apparent there was an ongoing conspiracy to distribute cocaine during this time period and accordingly Via was properly credited with the amounts sold by his co-conspirators. While it is not clear that Holland's part in the conspiracy was other than that of supplying the money for the Roanoke airport buy, even had the court not credited him with the amounts sold by the Vias, he would still be well within a base offense level of 26. Accordingly, both Via and Holland were properly credited with this base offense level.
 
 
 20
 Defendants also argue that the prosecution's selection of charges to be presented to the grand jury along with the government's selection of what amount of drugs to bring to the sale in a "reverse sting" operation violates due process and the separation of powers principles. However, a prosecutor has broad discretion in selecting the offenses to present to a grand jury and we find no evidence here of an abuse of that discretion which would rise to the level of a constitutional violation. See United States v. McClintock, 748 F.2d 1278 (7th Cir.1984), cert. denied, 474 U.S. 822 (1985). Moreover, while these particular issues were not before the Supreme Court in Mistretta v. United States, 109 S.Ct. 647 (1989), which held the sentencing guidelines constitutional, we see no constitutional infirmity in allowing the United States Attorney to select the offenses with which to charge a defendant in guidelines cases. See Lockett v. Ohio, 438 U.S. 586, 602-06 (1978) (noting that legislatures may determine the amount of discretion to repose with a judge in sentencing for non-capital offenses). The trial court did indicate that the government made an offer that no one in the drug business could refuse and therefore decided to credit the defendants with only the marijuana that was actually in the van. It is apparent that the defendants freely decided to accept this negotiated amount and therefore must now face the attendant consequences of that act.
 
 B.
 
 21
 Via next argues that the court should not have enhanced his sentence two points for the possession of firearms during the offense pursuant to U.S.S.G. Sec. 2D1.1(b)(1). Via does not dispute that he possessed the firearms but argues that because they were brought there pursuant to the undercover agent's request to trade them for drugs, the section should not apply. However, the guidelines do not require a connection between the weapon and the offense but merely require that the defendant possess the weapon during the commission of the offense. United States v. Restrepo, 884 F.2d 1294, 1296 (9th Cir.1989). The fact that the weapons were used for barter does not render this section inapplicable.
 
 C.
 
 22
 Both defendants argue that they should not have been assessed points under the leadership category of the guidelines, U.S.S.G. Sec. 3B1.1. The trial court found that Holland was the organizer of the cocaine operation in Martinsville as well as the chief supplier of the money that Via needed for the transaction in Roanoke. Evidence indicated that Holland made frequent calls to New York concerning the business and that he also made arrangements for Estrella and Perez when they traveled to Martinsville. As to Via, he contacted Holland for the money and enlisted his two sons as well as others to help him in acquiring the drugs at the Roanoke airport. Accordingly, there was no error in the trial court's enhancement of the offense level by four points.
 
 D.
 
 23
 Via also argues that the court should have given him a downward departure from the guidelines range because of his "substantial assistance" to the government in securing the guilty plea by Holland. Via asserts that when Holland discovered Via was going to testify against him, Holland decided to plead guilty rather than go to trial. However, a downward departure based on "substantial assistance to authorities" can only be made on a motion by the government. U.S.S.G. Sec. 5K1.1; United States v. Francois, 889 F.2d 1341 (4th Cir.1989), cert. denied, 110 S.Ct. 1822 (1990). The government apparently felt that the facts did not justify making a motion based on "substantial assistance" and vesting this decision with the United States Attorney does not violate separation of powers principles. See United States v. Ayarza, 874 F.2d 647 (9th Cir.1989). In any event, the judge specifically stated that he was giving Via twenty months' credit for his cooperation with the government and reduced his sentence accordingly.
 
 
 24
 In sum, we hold that there was sufficient evidence to convict Holland and Walton of the charges brought against them surrounding the Martinsville conspiracy. Moreover, the trial court properly sentenced Holland and Via following their guilty pleas in the Roanoke conspiracy. Therefore, the defendants' convictions and sentences are AFFIRMED.